E-FILED
Wednesday, 08 June, 2022  05:13:41 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

MARY DAILING, individually and on )
behalf of a Class of similarly situated )
individuals, )
            )
       *Plaintiff,* )
            )
       v. )       JURY TRIAL DEMANDED
DELAWARE NORTH COMPANIES )
GAMING & ENTERTAINMENT, INC. )
d/b/a JUMER'S CASINO & HOTEL, a )
Delaware corporation; BALLY'S QUAD )
CITIES CASINO & HOTEL, LLC, an )
Illinois limited liability company; and MORSE )
WATCHMANS INCORPORATED, a )
Connecticut corporation, )
            )
       *Defendants.* )

## COMPLAINT

Plaintiff, Mary Dailing ("Plaintiff"), individually and on behalf of others similarly situated, brings this Class Action Complaint ("Complaint") with Jury Demand against Defendants, Delaware North Companies Gaming & Entertainment, Inc. d/b/a Jumer's Casino & Hotel, Bally's Quad Cities Casino & Hotel, LLC, and Morse Watchmans Incorporated to stop Defendants' capture, collection, use, storage, and dissemination of individuals' biometric identifiers and/or biometric information in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, et seq. ("BIPA"), and the common law, and to obtain redress for persons injured by its conduct. Plaintiff alleges the following based on personal knowledge as to her own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by her attorneys.

### INTRODUCTION

1.    Defendant, Delaware North Companies Gaming & Entertainment, Inc. ("Delaware North") is a gambling and racing operations company headquartered in Buffalo, New York, that owns

and operates venues that offer video gambling machines, poker rooms, table games, restaurants, retail shops and hotels throughout the country, including in Illinois.

2.      In 2011, Delaware North purchased Jumer's Casino & Hotel ("Jumer's Casino") in Rock Island, Illinois.

3.      Between 2011 and June 2021, Delaware North owned and operated Jumer's Casino.

4.      Between 2011 and June 2021, Delaware North required that Jumer's Casino employees, including Plaintiff, scan their fingerprints into a secure lockbox manufactured by Defendant, Morse Watchmans, Incorporated as a condition of their employment. Only after their fingerprints were captured, collected, and saved to the Morse Watchmans lockbox were the employees able to access keys which were necessary for various casino operations.

5.      While many employers use conventional methods of granting employee-access to secure safes and lockboxes (such as ID badges, keys or digital passcodes), Delaware North required Jumer's Casino employees, including Plaintiff, to have their individualized fingerprints scanned by and saved to the Morse Watchmans lockbox and to an external casino computer using KeyPro III, a key control software developed by Morse Watchmans.

6.      Unlike ID badges, keys, or digital codes—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent identifiers associated with each employee. As a result, Plaintiff and other Jumer's Casino employees were exposed, and continue to be exposed, to serious and irreversible privacy risks. For example, if a biometric database is hacked, breached, or otherwise exposed, Jumer's Casino employees have ***no means*** by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this information.

7.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.,* specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

8.      Despite this law, Delaware North continued to utilize a biometric lockbox manufactured by Morse Watchmans that identified Jumer's Casino employees, such as Plaintiff, by capturing, collecting, using, storing and/or disseminating the individual's fingerprint(s) before granting access to the contents therein. Additionally, neither Delaware North, Jumer's Casino or Morse Watchmans ever:

   a.  Informed Plaintiff or the proposed Class in writing of the specific purpose(s) and length of time for which their fingerprints are collected, stored, and used, as required by BIPA;

   b.  Provided a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the proposed Class's fingerprints, as required by BIPA; and

   c.  Obtained a written release from Plaintiff or members of the proposed Class consenting to the capturing, collection, storage, use, and/or dissemination of their fingerprints, as required by BIPA.

9.      In doing so, Delaware North repeatedly violated BIPA by disregarding the statutorily protected privacy rights of its employees at Jumer's Casino, including Plaintiff, and by acting without regard to the concrete privacy rights and pecuniary interests that BIPA protects.

10.      The nature of the substantive privacy interests at issue here have been recognized by the Illinois Legislature pursuant to BIPA, as affirmed by the Illinois Supreme Court in *Rosenbach v. Six Flags Entertainment Corp.* Moreover, the Federal Trade Commission and numerous privacy experts have also recognized the substantive privacy interests at issue, as well as the resultant injury when those interest are violated. Furthermore, expert studies show that such injuries can be quantified in dollars and cents. For those reasons and others, the Illinois Supreme Court has recognized the substantive privacy rights given to persons in their biometric information under BIPA.

11.      Plaintiff brings this action for damages and other remedies resulting from the actions of Delaware North, by and through its ownership and operation of Jumer's Casino, in using a biometric lockbox manufactured by Morse Watchmans to capture, collect, store, use, and/or disseminate her biometrics, and those of the proposed Class defined below, without providing proper

notice, obtaining informed written consent, and without creating and/or providing a publicly available retention schedule and guidelines for permanently destroying such identifiers and/or information in direct violation of the Illinois BIPA.

12.     To the extent that Delaware North is still retaining Plaintiff's biometrics, such retention is unlawful. Plaintiff would not have provided her biometric data to Delaware North had she known the same would remain with the corporation for an indefinite period or subject to unauthorized disclosure.

13.     Plaintiff and the proposed Class have suffered an injury in fact based on Delaware North's violations of their legal rights through its ownership and operation of Jumer's Casino. Such violations have raised a material risk that Plaintiff and the putative Class's biometric data will be unlawfully accessed by third parties.

14.     Delaware North is directly liable for, and had actual knowledge of, the BIPA violations alleged herein.

15.     To the extent that Morse Watchmans is still retaining Plaintiff's biometrics, such retention is unlawful. Plaintiff would not have scanned her biometric data into the Morse Watchmans lockbox had she known the same would remain with the corporation for an indefinite period or subject to unauthorized disclosure.

16.     Upon information and belief, Plaintiff and other Jumer's employees' biometrics were transmitted to Morse Watchman's through use of its lockbox. Plaintiff and the proposed Class have suffered an injury in fact based on Morse Watchmans' violations of their legal rights through its manufacturing of a biometric lockbox used by Delaware North at Jumer's Casino that captured, collected, stored, used, and/or disseminated her biometrics, and those of the proposed Class defined below, without providing proper notice, obtaining informed written consent, and without creating and/or providing a publicly available retention schedule and guidelines for permanently destroying

such identifiers and/or information in direct violation of the Illinois BIPA. Such violations have raised a material risk that Plaintiff and the putative Class's biometric data will be unlawfully accessed by third parties.

17.     Morse Watchmans is directly liable for, and had actual knowledge of, the BIPA violations alleged herein.

18.     In June 2021, Delaware North sold Jumer's Casino and its business operations to Bally's Corporation, a gaming, betting, and interactive entertainment company headquartered in Providence, Rhode Island.

19.     In September 2021, Bally's Corporation rebranded Jumer's Casino as Bally's Quad Cities Casino & Hotel, LLC ("Defendant Bally's Quad Cities").

20.     Upon information and belief, Bally's Quad Cities assumed some or all of Delaware North's potential future liabilities as a condition of the sale.

21.     Upon information and belief, Bally's Quad Cities is directly liable for Delaware North's BIPA violations, in whole or in part, that occurred prior to the sale and rebranding of Jumer's Casino.

22.      Upon information and belief, Bally's Quad Cities has continued to utilize the biometric lockbox manufactured by Morse Watchmans and their KeyPro III key control software system.

23.     To the extent that Bally's Quad Cities is still retaining Plaintiff's biometrics, such retention is unlawful. Plaintiff would not have scanned her biometric data into the Morse Watchmans lockbox while employed at Jumer's Casino had she known the same would remain with a successor to Jumer's Casino for an indefinite period or subject to unauthorized disclosure.

24.     Upon information and belief, Plaintiff and the proposed Class have suffered an injury in fact based on Bally's Quad Cities' violations of their legal rights through its continued utilization of the Morse Watchmans biometric lockbox and their KeyPro III key control software system.

25.     Upon information and belief, such violations have raised a material risk that Plaintiff and the putative Class's biometric data will be unlawfully accessed by third parties.

26.     Upon information and belief, Bally's Quad Cities is directly liable for, and had actual knowledge of, the BIPA violations alleged herein.

27.     Accordingly, Plaintiff, individually and on behalf of the proposed Class defined below, seeks an Order: (a) declaring that Delaware North, Bally's Quad Cities and Morse Watchmans (collectively "Defendants") violated BIPA; (b) granting an injunction mandating that Defendants comply with BIPA; and (c) awarding statutory damages to Plaintiff and the proposed Class, together with costs and reasonable attorneys' fees.

## PARTIES

28.     During the relevant time period, Plaintiff, Mary Dailing, has been a resident and citizen of the state of Illinois.

29.     During the relevant time period, Defendant, Delaware North Companies Gaming & Entertainment, Inc., has been a Delaware corporation with its principal place of business in Buffalo, New York. Delaware North is registered to conduct business in Illinois with the Illinois Secretary of State (as File No. 70634643). Delaware North conducts business throughout the State of Illinois and in the County of Rock Island through its ownership and operation of Jumer's Casino & Hotel. Upon information and belief, Delaware North maintains employee files.

30.     During the relevant time period, Defendant, Bally's Quad Cities Casino & Hotel, LLC, is an Illinois limited liability company with its principal office located at 777 Bally Boulevard, Rock Island, IL 61201. Bally's Quad Cities is registered to conduct business in Illinois with the Illinois Secretary of State since June 9, 2021 (as File No. 10022614).

31.     During the relevant time period, Defendant, Morse Watchmans Incorporated is and has been a Connecticut corporation with its principal office located at 2 Morse Road, Oxford,

Connecticut, 06478. Morse Watchmans transacts business within the state of Illinois through its sale of key management devices and software.

## JURISDICTION AND VENUE

32.     This Court has Diversity Jurisdiction under 28 U.S.C. § 1332(d) because: (i) at least one member of the putative class is a citizen of a state different from any Defendant; (ii) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (iii) none of the exceptions under that subsection apply to this action.

33.     This court has personal jurisdiction over Defendants because all three Defendants transact and/or transacted business in Illinois during the relevant time period and a substantial part of the events giving rise to Plaintiff's claims arise out of Defendants' unlawful in-state actions, as Defendants captured, collected, stored, and used Plaintiff's biometrics in this State.

34.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, as Defendants captured, collected, stored, and used Plaintiff's biometrics at one of its facilities located in this District.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act

35.     Major national corporations started using Chicago and other locations in Illinois in the early 2000s to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5©. Given its relative infancy, an overwhelming portion of the public became weary of the then-growing yet unregulated technology. *See* 740 ILCS 14/5.

36.     In late 2007, Pay by Touch, a biometrics company that provided fingerprint scanners to major retailers throughout the State of Illinois to facilitate consumer transactions, filed for bankruptcy. The bankruptcy alarmed the Illinois Legislature due to the risk of millions of fingerprint

records—which, like other unique biometric identifiers, can be linked to people's sensitive financial personal data—being sold, distributed or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who employed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

37.     The Illinois Legislature recognized that the sensitivity of biometric information was in a class of its own: "biometrics are unlike other unique identifiers that are used to access finances or other sensitive information.  For example, even sensitive information like Social Security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to each individual and cannot be changed, and therefore, once compromised, such individual has no recourse, is at a heightened risk for identity theft in, and is likely to withdraw from biometric facilitated transactions." 740 ILCS 14/5.  The risk is compounded when, as in the workplace context, a person's biometric information is also associated with his/her Social Security number and potentially other relevant financial information or personal identifiable information.  The gravity of the unresolvable problems created in the event of a data breach is so severe that the unlawful collection of such information constitutes actual harm.

38.     Acknowledging the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information, the Illinois Legislature enacted BIPA in 2008 to regulate the capture, collection, use, and retention of biometric information by private entities. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

39.     BIPA broadly defines the biometrics to which it applies.  Under the Act, a "biometric identifier" is any personal feature that is unique to an individual and includes fingerprints, facial scans,

iris scans, palm scans, and DNA, among others. "Biometric information" is any information captured, converted, stored, or shared based on a person's biometric identifier which is used to identify an individual. 740 ILCS 14/10.

40.     Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000 or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

41.     BIPA is an informed consent statute. To effectuate a persons' substantive privacy interest in their unique immutable biometric information, BIPA provides that a private entity may not obtain and/or possess an individual's biometrics unless it first:

    i.   informs the person whose biometrics are to be collected in writing that biometric identifiers or biometric information will be collected or stored;

    ii.   informs the person whose biometrics are to be collected in writing of the specific purpose and the length of term for which such biometric identifiers or biometric information is being collected, stored, and used;

    iii.   obtains a written release from the person whose biometrics are to be collected allowing the capture and collection of their biometric identifiers or biometric information; <u>and</u>

    iv.   publishes a publicly available retention schedule and guidelines for permanently destroying biometric identifiers and biometric information.

*See* 740 ILCS 14/15(a).

42.     BIPA recognizes that, without notice and consent, persons are unaware of the nature and extent of the sensitive personal information companies collect from them and use to the companies' benefit.  BIPA acknowledges persons' substantive privacy right in biometric information and protects such right from encroachment by private companies.  The Illinois Supreme Court has agreed, finding that the Illinois General Assembly codified a personal right to privacy in and control over biometric identifiers and biometric information.

43.     The enactment of BIPA was prescient. Today, many businesses and financial institutions have incorporated the use of biometrics into their consumer products, including such ubiquitous consumer products as checking accounts and cell phones.  Moreover, the usage of biometrics has been incorporated into the labor and employment side of commerce for security and/or timekeeping purposes, as is the case here.

44.     As the recent Equifax Data Breach and others have made clear, electronically stored information ("ESI") is notoriously difficult to protect and its dissemination can have disastrous consequences. The inherent difficulty in protecting ESI, combined with the uniquely irreplaceable nature of biometric information, means that the privacy risks associated with a person's biometrics are unparalleled. Such information is far more sensitive than a Social Security number, passport, birth certificate, or similar sensitive personal information.

## II.     BIPA Creates a Private Right of Action for Statutory Violations

45.     Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, and use biometrics and creates a private right of action for lack of compliance.

46.     Before BIPA was passed in 2008, the Personal Information Protection Act, 815 ILCS § 530 *et seq.* ("PIPA"), another data privacy statute, was the controlling law in Illinois since 2006.  PIPA provided a private right of action if a company possessing an individual's unique biometric data (the same data regulated by the BIPA) suffered a data security breach and failed to give affected consumers proper notice of such a breach.  Further, numerous state and federal statutes, including the Illinois Consumer Fraud Act, also provided consumers a remedy in the event of an actual breach.

47.      Because the Illinois Legislature believed that PIPA provided insufficient protection to an individual regarding his or her highly sensitive biometrics, they enacted BIPA to expand the law

to not only cover data breach cases, but to also regulate the initial collection, use, storage, dissemination and publication of such biometrics.

48.     Indeed, the Illinois Supreme Court recently found that a person is "aggrieved" under BIPA when a private entity fails to comply with the requirements under Section 15 of the Act.

49.     BIPA is narrowly tailored with provisions that do not place an absolute bar on the collection, capture, or dissemination of biometrics. For companies wishing to comply with BIPA, such compliance is straightforward. The necessary disclosures and a written release can be easily achieved through a single, signed sheet of paper. BIPA's requirements simply bestow on consumers a right to privacy in their biometrics and a right to make an informed decision when electing to provide or withhold their most sensitive information and on what terms.

**III.     Defendant, Delaware North's Statutory Violation of BIPA**

50.     Even though BIPA passed through the Illinois Legislature in mid-2008, Defendant, Delaware North, continued to capture, collect, store, use and/or disseminate the biometric data of its employees, including Plaintiff and members of the proposed Class, in violation of BIPA.

51.     Specifically, when individuals were hired by Delaware North to work at Jumer's Casino, they were required to scan their fingerprint(s) into a biometric lockbox manufactured by Morse Watchmans as a condition of employment. The employees' fingerprints were then captured and stored directly to the lockbox and exported to a casino computer using Morse Watchmans' KeyPro III key control software.

52.     The purpose of the biometric lockbox was to improve Jumer's Casino's ability to regulate which individuals had access to the keys within the lockbox.

53.     Most businesses use traditional methods of granting access to lockboxes, such as ID badges, keys, or digital passcodes, that do not capture, collect or store workers' biometric information.

Such methods can be less secure and more inconvenient, as they cannot guarantee that the ID badge, key or digital passcode will not be misplaced or lost and fall into the wrong hands.

54.     Biometric lockbox mechanisms, on the other hand, better ensure that only those select individuals whose unique, immutable biometric characteristics are captured and saved into the lockbox's database are able to access to the contents of the lockbox.  As such, biometric lockboxes can save companies significant amounts of money and inconvenience.

55.     Because of the cost-savings, Delaware North has benefited from the purchase and use of its biometric lockbox in lieu of less invasive—but also less convenient— methods of safekeeping.

56.     Plaintiff could only gain access to certain keys necessary for everyday casino operations by using the Morse Watchmans biometric lockbox provided by Delaware North as owner and operator of Jumer's Casino. Delaware North was aware that Jumer's Casino employees, including Plaintiff, would be required to use the Morse Watchmans lockbox and that the device would capture, collect, store, use and disseminate such employees' biometrics.

57.     Delaware North disregarded the Illinois Legislature's reasoning in enacting BIPA, specifically, that it is crucial for individuals to understand when providing biometric identifiers, such as fingerprints, who is collecting that data, how it will be used, where it will be transmitted, for what purpose(s) it will be transmitted, and for how long it will be stored.

58.     Upon information and belief, Delaware North continues to disregard its former employees' statutory rights by unlawfully storing, using and disseminating their biometric identifiers and information without obtaining the individuals' informed written consent as required by BIPA.

59.     Delaware North never provided its employees with a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying employees' fingerprint data when the initial purpose for collecting or obtaining such data is no longer relevant, as required by BIPA.

60.     Upon information and belief, Delaware North failed to inform its employees that their fingerprint data was disclosed to Morse Watchmans and potentially other currently unknown third parties, which host the biometric data in their data centers; failed to inform its employees of the purposes and duration for which it collects their biometric data; and failed to obtain written releases from employees before collecting their fingerprint data.

61.     Delaware North lacked, and continues to lack, any written, publicly available retention schedule and guidelines for permanently destroying the biometric data of Plaintiff and members of the proposed Class.

62.     Upon information and belief, Delaware North has not, nor will it, destroy the biometric data of Plaintiff and members of the proposed Class, even though the initial purpose for collecting or obtaining such data has been satisfied.

63.     Delaware North employees are not told what might happen to their biometric data if and when it merges with another company or worse, if and when the business folds or when the businesses of the third parties that have received their biometric data fold.

64.     Since Delaware North has never published a BIPA-mandated data retention policy, nor has it disclosed all purposes for its collection of biometric data, Delaware North employees, such as Plaintiff and members of the putative Class, have no idea the extent to whom their individual biometric data has been sold, disclosed, re-disclosed or otherwise disseminated. Moreover, Plaintiff and the putative Class are not told to whom Delaware North is and/or was disclosing their biometric data, or what might happen to their biometric data in the event of a merger or bankruptcy.

65.     These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

66.     By and through the actions detailed above, Delaware North disregarded Plaintiff's and other similarly-situated individuals' statutory rights in violation of BIPA.

### IV.    Defendant, Delaware North's Statutory Violations of Plaintiff's Rights Under BIPA

67.    In June 2019, Plaintiff, Mary Dailing, was hired by Defendant, Delaware North to work as a security officer at Jumer's Casino.

68.    After a month of training, Plaintiff was required to scan and register her fingerprint(s) into a Jumer's Casino lockbox manufactured by Morse Watchmans as a condition of employment. This allowed Delaware North to use Plaintiff's biometric identifier(s) as an authentication factor before granting access to the keys within the lockbox.

69.    Prior to taking Plaintiff's biometrics, Delaware North did not inform Plaintiff, in writing or otherwise, the purpose(s) for which her biometric data was being collected, the length of time for which her fingerprint data would be stored, the retention schedule for Plaintiff's fingerprint data, the guidelines for permanently destroying Plaintiff's fingerprint data, and the name(s) of any third parties to/with whom Plaintiff's fingerprint data would be disclosed and/or disseminated. As a result, Delaware North violated BIPA the moment it required Plaintiff to scan her fingerprint into the Morse Watchmans lockbox at Jumer's Casino.

70.    Prior to taking Plaintiff's biometrics, Delaware North did not seek, and Plaintiff did not provide, a written release consenting to the capture, collection, use or storage of Plaintiff's biometric data or of the disclosure and/or dissemination of her biometric data to third parties. Such a release was never obtained and, as a result, Delaware North violated BIPA every time it required Plaintiff to scan her fingerprint to the Morse Watchmans lockbox at Jumer's Casino.

71.    Prior to taking Plaintiff's biometrics, Delaware North did not publish any policy specifically about the collection, retention, use, deletion or dissemination of her biometric data. As a result, Delaware North violated BIPA on each occasion it disseminated Plaintiff's biometric data to third parties.

14

72.     Prior to taking Plaintiff's biometrics, Delaware North did not make publicly available any written policy as to its biometric retention schedule and guidelines for permanently destroying the collected biometrics after the initial purpose for collecting or obtaining such data had been satisfied or within three years of the employee's last interaction with the company. As a result, Delaware North has violated, and continues to violate, BIPA with every passing day.

73.     Delaware North subsequently stored Plaintiff's fingerprint data directly to the Morse Watchmans lockbox at Jumer's Casino and to a casino computer using the KeyPro III key control software.

74.     Plaintiff was required to scan her fingerprint each time she needed to access the keys stored within the Morse Watchmans lockbox at Jumer's Casino.

75.     On information and belief, Delaware North still retains the biometric information of Plaintiff and all other members of the proposed Class. Such retention is an unlawful and continuing infringement of the aforesaid individuals' right to privacy in their biometric identifiers and/or information.

76.     Plaintiff stopped working at Jumer's Casino and for Delaware North in November 2020 and scanned her fingerprints through the end of her employment.

77.     Prior to, at the time of, and since Plaintiff's biometrics were captured, Delaware North did not, and still does not, have a publicly available policy of informing workers, like Plaintiff, what happens to their biometric data after it is captured, where it is stored, how it is used, whether it is disseminated to a third party and, if so, which third party, and what would happen to the data if an individual discontinues working for Delaware North, if the facility were to close, or if Delaware North was to be acquired, sold, or file for bankruptcy.

78.     In fact, in June 2021, Delaware North sold Jumer's Casino to Bally's Corporation and it was rebranded as Bally's Quad Cities. However, Plaintiff was not informed whether her biometric

data was destroyed, retained by Delaware North, sold to Bally's Quad Cities, or disseminated to some other third-party vendor.

79.     Delaware North's conduct is particularly upsetting considering the economic benefit it derives from its biometric lockbox system while wholly avoiding any costs associated with implementing such system in compliance with BIPA. This cognizable benefit is not only to the detriment of individual Illinois residents, but also to its law-abiding competitors who comply with BIPA.

80.     As the Illinois legislature acknowledged in enacting BIPA, persons like Plaintiff should not have to wait until their immutable personal characteristics are stolen by criminals to have a right to pursue a claim to protect their privacy interests.

## V.     Defendant, Delaware North's Repeated Violations of Plaintiff's Statutory Rights Under BIPA

81.     During the relevant time period, Plaintiff worked for Delaware North at Jumer's Casino in downtown Rock Island, Illinois, which utilized a biometric lockbox manufactured by Morse Watchmans as a part of its daily casino operations.

82.     As a condition of her employment, Plaintiff was required to scan her biometrics, in the form of fingerprints, to the Morse Watchmans lockbox at Jumer's Casino.

83.     After Plaintiff's biometrics were initially captured and collected, Plaintiff was required to scan her biometrics every time she required access to the keys contained within the Morse Watchmans lockbox at Jumer's Casino. The only way Plaintiff could access the keys within the Morse Watchmans at Jumer's Casino was to authentic her identify by inputting her biometrics.

84.     On information and belief, after the initial capture and collection of Plaintiff's biometrics, Delaware North then disseminated Plaintiff's biometrics to a third party, including Morse Watchmans, that stored the initially captured biometric data, as well as each subsequent capture of Plaintiff's biometric data that occurred when Plaintiff input her fingerprint(s) into the lockbox.

85.     Prior to taking Plaintiff's biometrics, neither Delaware North, nor anyone on Delaware North's behalf, informed Plaintiff in writing that her biometrics were being collected, stored, used, and/or disseminated.

86.     Prior to taking Plaintiff's biometrics, neither Delaware North, nor anyone on Delaware North's behalf, sought, and Plaintiff never provided, any written consent relating to the capture, collection, use, storage, and/or dissemination of her biometrics.

87.     Prior to taking Plaintiff's biometrics, neither Delaware North, nor anyone on Delaware North's behalf, published any policy specifically about the collection, retention, use, deletion, or dissemination of biometrics.

88.     Prior to taking Plaintiff's biometrics, neither Delaware North, nor anyone on Delaware North's behalf, made publicly available any written policy as to its biometric retention schedule and guidelines for permanently destroying the collected biometrics after the initial purpose for collecting or obtaining such data had been satisfied or within three years of the employee's last interaction with the company.

89.     Based on the foregoing, Delaware North violated Plaintiff's BIPA rights: (a) when it originally captured and/or collected Plaintiff's biometrics; (b) on each occasion Plaintiff scanned her fingerprint through the Morse Watchmans biometric lockbox at Jumer's Casino; and (c) on each occasion Delaware North transmitted such biometrics to a third party, in conformance with standard biometric industry practice.

90.     Delaware North's unlawful actions have exposed its workers to serious and irreversible privacy risks—risks that BIPA was designed to avoid—including the ever-present risk of a data breach of Delaware North's systems exposing individuals' biometrics to hackers and other wrongdoers worldwide.

91.     Plaintiff has suffered pecuniary damages in the form of diminution in the unique identifying value of her biometric identifiers and/or information and other costs associated with identity protection.  Plaintiff would not have agreed to work in the subject environment, at least not without additional compensation, had she been informed pursuant to BIPA of the nature of Delaware North's utilization of a biometric lockbox device.

92.     Furthermore, Plaintiff's biometrics are economically valuable and such value will increase as the commercialization of biometrics continues to grow.  Delaware North's repeated use of Plaintiff's biometrics does and will continue to confer a benefit on Delaware North for which Plaintiff was not sufficiently compensated.

93.     Additionally, Plaintiff experiences mental anguish and injury when she thinks about the status of her biometrics and who has, or could have, access to such private information; what would happen to her biometrics if Delaware North or its customers went bankrupt or otherwise sold its assets; whether Delaware North will ever delete her biometric information; what would happen if Delaware North or its customers were to experience a data breach; and how any such breach would result in irreparable harm to her identity.  This harm is even more acute because an individual with access to Plaintiff's biometrics could potentially access other financial accounts or health records which may currently, or at some time in the future, be secured through her biometrics.

94.     Furthermore, the risk to workers as a result of Delaware North's actions is compounded when, as here, workers' biometric information is associated with their Social Security number and potentially other relevant financial information. The gravity of the unresolvable problems created in the event of a biometric data breach is so severe that the unlawful collection and/or dissemination of such information constitutes actual harm.

95.     Plaintiff and other members of the proposed Class have continuously and repeatedly been exposed to substantial and irreversible loss of privacy by Delaware North's retention of their biometric information without their consent.

96.     Plaintiff and other members of the proposed Class have continuously and repeatedly been exposed to the risks and harmful conditions created by Delaware North's multiple BIPA violations as alleged herein.

97.     By failing to comply with BIPA, Delaware North has violated Plaintiff's and the proposed Class's substantive state rights to biometric information privacy as well as the common law.

**VI.    Defendant, Morse Watchmans Violations of Plaintiff's Statutory Rights Under BIPA**

98.     During the relevant time period, Plaintiff worked for Delaware North at Jumer's Casino in downtown Rock Island, Illinois, which utilized a biometric lockbox manufactured by Morse Watchmans as a part of its daily casino operations.

99.     As a condition of her employment, Plaintiff was required to scan her biometrics, in the form of fingerprints, to the Morse Watchmans lockbox at Jumer's Casino.

100.    After Plaintiff's biometrics were initially captured and collected, Plaintiff was required to scan her biometrics every time she required access to the keys contained within the Morse Watchmans lockbox at Jumer's Casino. The only way Plaintiff could access the keys within the Morse Watchmans lockbox at Jumer's Casino was to authenticate her identify by inputting her biometrics.

101.    On information and belief, Morse Watchmans received Plaintiff's biometrics each time she scanned her finger into the lockbox.

102.    Prior to taking Plaintiff's biometrics, neither Morse Watchmans, nor anyone on Morse Watchmans' behalf, informed Plaintiff in writing that her biometrics were being collected, stored, used, and/or disseminated.

103. Prior to taking Plaintiff's biometrics, neither Morse Watchmans, nor anyone on Morse Watchmans' behalf, sought, and Plaintiff never provided, any written consent relating to the collection, use, storage, or dissemination of her biometrics.

104. Prior to taking Plaintiff's biometrics, neither Morse Watchmans, nor anyone on Morse Watchmans' behalf, published any policy specifically about the collection, retention, use, deletion, or dissemination of biometrics.

105. Prior to taking Plaintiff's biometrics, neither Morse Watchmans, nor anyone on Morse Watchmans' behalf, made publicly available any written policy as to its biometric retention schedule and guidelines for permanently destroying the collected biometrics after the initial purpose for collecting or obtaining such data had been satisfied or within three years of the employee's last interaction with the company.

106. Based on the foregoing, Morse Watchmans violated Plaintiff's BIPA rights: (a) when it originally captured and/or collected Plaintiff's biometrics; (b) on each occasion Plaintiff scanned her fingerprint through the Morse Watchmans biometric lockbox at Jumer's Casino; and (c) on each occasion Morse Watchmans transmitted such biometrics to a third party, in conformance with standard biometric industry practice.

107. Morse Watchmans' unlawful actions have exposed its workers to serious and irreversible privacy risks—risks that BIPA was designed to avoid—including the ever-present risk of a data breach of Morse Watchmans' systems exposing individuals' biometrics to hackers and other wrongdoers worldwide.

108. Plaintiff has suffered pecuniary damages in the form of diminution in the unique identifying value of her biometric identifiers and/or information and other costs associated with identity protection. Plaintiff would not have agreed to work in at Jumer's Casino, at least not without

additional compensation, had she been informed pursuant to BIPA of the nature of Delaware North's utilization of a Morse Watchman biometric lockbox.

109.    Furthermore, Plaintiff's biometrics are economically valuable and such value will increase as the commercialization of biometrics continues to grow.  Morse Watchmans' repeated use of Plaintiff's biometrics does and will continue to confer a benefit on Morse Watchman for which Plaintiff was not sufficiently compensated.

110.    Additionally, Plaintiff experiences mental anguish and injury when she thinks about the status of her biometrics and who has, or could have, access to such private information; what would happen to her biometrics if Morse Watchman or its customers went bankrupt or otherwise sold its assets; whether Morse Watchman will ever delete her biometric information; what would happen if Morse Watchman or its customers were to experience a data breach; and how any such breach would result in irreparable harm to her identity.  This harm is even more acute because an individual with access to Plaintiff's biometrics could potentially access other financial accounts or health records which may currently, or at some time in the future, be secured through her biometrics.

111.    Furthermore, the risk to workers as a result of Morse Watchmans' actions is compounded when, as here, workers' biometric information is associated with their Social Security number and potentially other relevant financial information. The gravity of the unresolvable problems created in the event of a biometric data breach is so severe that the unlawful collection and/or dissemination of such information constitutes actual harm.

112.    Plaintiff and other members of the proposed Class have continuously and repeatedly been exposed to substantial and irreversible loss of privacy by Morse Watchmans' retention of their biometric information without their consent.

113.     Plaintiff and other members of the proposed Class have continuously and repeatedly been exposed to the risks and harmful conditions created by Morse Watchmans' multiple BIPA violations as alleged herein.

114.     By failing to comply with BIPA, Morse Watchmans has violated Plaintiff's and the proposed Class's substantive state rights to biometric information privacy as well as the common law.

**VII.    Defendant, Bally's Quad Cities Violations of Plaintiff's Statutory Rights Under BIPA**

115.     In June 2021, Delaware North sold Jumer's Casino and its business operations to Bally's Corporation, a gaming, betting and interactive entertainment company headquartered in Providence, Rhode Island.

116.     In September 2021, Bally's Corporation rebranded Jumer's Casino as Bally's Quad Cities Casino & Hotel, LLC ("Defendant Bally's Quad Cities").

117.     Upon information and belief, Bally's Quad Cities retained the Morse Watchmans biometric lockbox utilized by Delaware North in its operation of Jumer's Casino.

118.     Upon information and belief, Bally's Quad Cities now retains the biometric identifiers and/or information of Plaintiff and members of the proposed Class that were initially captured, collected, stored, used and/or disseminated by Delaware North in its operation of Jumer's Casino.

119.     Upon information and belief, Bally's Quad Cities assumed some or all of Delaware North's potential future liabilities as a condition of the sale. As a result, Bally's Quad Cities is directly liable for Delaware North's BIPA violations that occurred prior to the sale and rebranding of Jumer's Casino and for its own continued BIPA violations that occurred after the sale and rebranding of Jumer's Casino to Bally's Quad Cities Casino & Hotel.

**CLASS ALLEGATIONS**

120.     Plaintiff brings this action on behalf of herself and similarly situated individuals pursuant to Federal Rule of Civil Procedure 23.  Plaintiff seeks to represent a Class ("Class" unless otherwise noted) defined as follows:

> Class: All individuals whose biometrics were captured, collected, obtained, stored, used, transmitted, and/or disseminated by or on behalf of Delaware North Companies Gaming & Entertainment, Inc., Bally's Quad Cities Casino & Hotel and/or Morse Watchmans or using a biometric lockbox and/or key control software manufactured by Morse Watchmans, within the state of Illinois at any time within the applicable limitations period.

121.     Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

122.     Upon information and belief, there are at least hundreds of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable.  Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified either through Delaware North's and Bally's Quad Cities' employment records or Morse Watchmans' sales records for biometric lockboxes and/or key control software sold within the state of Illinois.

123.     Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent, because the factual and legal bases of Delaware North's, Morse Watchmans', and Bally's Quad Cities' liability to Plaintiff and the other members are the same, and because Delaware North's, Morse Watchmans', and Bally's Quad Cities' conduct has resulted in similar injuries to Plaintiff and to the Class.  As alleged herein, Plaintiff and the Class have all suffered damages as a result of Delaware North's, Morse Watchmans', and Bally's Quad Cities' BIPA violations and common law transgressions.

124.    There are many questions of law and fact common to the claims of Plaintiff and the

Class, and those questions predominate over any questions that may affect individual members.

Common questions for the Class include, but are not limited to, the following:

    a.    Whether Delaware North, Morse Watchmans and/or Bally's Quad Cities captured, collected, stored, used, transmitted and/or disseminated the biometrics of the Class members;

    b.    Whether Delaware North, Morse Watchmans and/or Bally's Quad Cities made available to the public a written policy that establishes a retention schedule and guidelines for destroying biometrics, as required by BIPA;

    c.    Whether Delaware North, Morse Watchmans and/or Bally's Quad Cities obtained a written release from the Class members before capturing, collecting, or otherwise obtaining workers' biometrics, as required by BIPA;

    d.    Whether Delaware North, Morse Watchmans and/or Bally's Quad Cities provided a written disclosure to workers that explains the specific purposes, and the length of time, for which their biometrics were being collected, stored and used before taking their biometrics, as required by BIPA;

    e.    Whether Delaware North's, Morse Watchmans' and/or Bally's Quad Cities' conduct violates BIPA;

    f.    Whether Delaware North's, Morse Watchmans' and/or Bally's Quad Cities' violations of BIPA are willful or reckless;

    g.    Whether Delaware North, Morse Watchmans and/or Bally's Quad Cities are still in possession of the Plaintiff's and the Class's biometric information; and

    h.    Whether Plaintiff and the Class are entitled to damages and injunctive relief.

125.    Absent a class action, most members of either Class would find the cost of litigating

their claims to be prohibitively expensive and would thus have no effective remedy.  The class

treatment of common questions of law and fact is superior to multiple individual actions or piecemeal

litigation in that it conserves the resources of the courts and the litigants and promotes consistency

and efficiency of adjudication.

126.    Plaintiff will fairly and adequately represent and protect the interests of the other

members of the Class she seeks to represent.  Plaintiff has retained counsel with substantial experience

in prosecuting complex litigation and class actions.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so.  Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

127.    Defendants Delaware North, Morse Watchmans and Bally's Quad Cities have acted and/or failed to act on grounds generally applicable to the Plaintiff and the other members of both Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of both Classes and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

### COUNT 1

**Violations of the Illinois Biometric Information
Privacy Act, 740 ILCS 14/1, *et seq.*,
(On behalf of Plaintiff and the Class and against Defendant,
Delaware North Companies Gaming & Entertainment, Inc. d/b/a Jumer's Casino & Hotel)**

128.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

129.    BIPA makes it unlawful for private entities to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being captured, collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b).

130.    Illinois' BIPA also requires that private entities in possession of biometric identifiers and/or biometric information establish and maintain a publicly available retention policy. Entities which possess biometric identifiers or information must (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric information

(entities may not retain biometric information longer than three years after the last interaction with the individual); and (ii) must adhere to the publicly posted retention and deletion schedule. 740 ILCS 14/15(a).

131.    Delaware North is a "private entity" as that term is defined under BIPA. 740 ILCS 14/10.

132.    Plaintiff and the Class had their "biometric identifiers" captured, collected, stored, disseminated, or otherwise obtained and/or used by Delaware North. Plaintiff and the Class's "biometric identifiers" were also utilized to identify them, and therefore constitute "biometric information" as defined by the BIPA. 740 ILCS 14/10.

133.    Each instance when Plaintiff and the Class scanned their biometrics into the Morse Watchmans biometric lockbox utilized by Delaware North in its operation of Jumer's Casino, Defendant captured, collected, stored, disseminated and/or used such biometrics without valid consent and without complying with the BIPA.

134.    Plaintiff and the Class have been aggrieved by Defendant, Delaware North's failures to adhere to the following BIPA requirements, with each such failure constituting a separate and distinct violation of BIPA:

      a.    Delaware North failed to inform Plaintiff and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

      b.    Delaware North failed to inform Plaintiff and Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

      c.    Delaware North failed to inform Plaintiff and the Class in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

      d.    Delaware North failed to obtain a written release, as required by 740 ILCS 14/15(b)(3);

e.  Delaware North failed to provide a publicly available retention schedule detailing the length of time the biometrics are stored and/or guidelines for permanently destroying the biometrics it stores, as required by 740 ILCS 14/15(a); and

f.  Delaware North failed to obtain informed consent to disclose or disseminate the Class's biometrics, as required by 740 ILCS 14/15(d)(1).

135.  By capturing, collecting, storing, using, and disseminating Plaintiff's and the Class's biometrics as described herein, Delaware North, denied Plaintiff and the Class their right to statutorily-required information and violated their respective rights to biometric information privacy, as set forth in the BIPA.

136.  By utilizing a biometric lockbox, which relies on the capture, collection, use, and handling of biometrics, yet nonetheless failing to comply with the substantive provisions of the BIPA, Delaware North, profited from biometrics in violation of 740 ILCS 14/15(c).  Delaware North knew that the biometric lockbox it was using would be subject to the provisions of the BIPA yet failed to take reasonable measures to comply with the same.

137.  Had Defendant, Delaware North, informed Plaintiff that she was not being provided with the required information regarding her biometrics and the biometric lockbox technology as required by law, she would have sought additional compensation or an alternate arrangement that did not require the provision of her biometrics.

138.  Further, had Defendant, Delaware North, provided Plaintiff with all required disclosures, she would have been able to make an informed decision on whether to accept the offered rate of pay, whether to request accommodations related to participation in the biometric program, including whether to condition her work on being provided an alternative which did not depend on the provision of her sensitive biometric information.

139.   BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of the BIPA and, alternatively, damages of $1,000 for each negligent violation of the BIPA. 740 ILCS 14/20(1).

140.   Delaware North's violations of the BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements.  Alternatively, Delaware North negligently failed to comply with BIPA.  Plaintiff is entitled to statutory damages accordingly.

## COUNT 2

### Violations of the Illinois Biometric Information
Privacy Act, 740 ILCS 14/1, *et seq.*,
(On behalf of Plaintiff and the Class and against Defendant,
Morse Watchmans Incorporated)

141.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

142.   Morse Watchmans is a "private entity" as that term is defined under BIPA. 740 ILCS 14/10.

143.   Upon information and belief, Plaintiff and the Class had their "biometric identifiers" captured, collected, stored, disseminated, or otherwise obtained and/or used by Morse Watchmans. Plaintiff and the Class's "biometric identifiers" were also utilized to identify them, and therefore constitute "biometric information" as defined by the BIPA.  740 ILCS 14/10.

144.   Upon information and belief, each instance when Plaintiff and the Class scanned their biometrics into the Morse Watchmans biometric lockbox utilized by Delaware North in its operation of Jumer's Casino, Morse Watchmans captured, collected, stored, disseminated and/or used such biometrics without valid consent and without complying with the BIPA.

145.   Upon information and belief, Plaintiff and the Class have been aggrieved by Morse Watchmans' failures to adhere to the following BIPA requirements, with each such failure constituting a separate and distinct violation of BIPA:

g.  Morse Watchmans failed to inform Plaintiff and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);

h.  Morse Watchmans failed to inform Plaintiff and Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

i.  Morse Watchmans failed to inform Plaintiff and the Class in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);

j.  Morse Watchmans failed to obtain a written release, as required by 740 ILCS 14/15(b)(3);

k.  Morse Watchmans failed to provide a publicly available retention schedule detailing the length of time the biometrics are stored and/or guidelines for permanently destroying the biometrics it stores, as required by 740 ILCS 14/15(a); and

l.  Morse Watchmans failed to obtain informed consent to disclose or disseminate the Class's biometrics, as required by 740 ILCS 14/15(d)(1).

146.  By capturing, collecting, storing, using, and disseminating Plaintiff's and the Class's biometrics as described herein, Morse Watchmans denied Plaintiff and the Class their right to statutorily-required information and violated their respective rights to biometric information privacy, as set forth in the BIPA.

147.  By manufacturing a biometric lockbox, which relies on the capture, collection, use, and handling of biometrics, yet nonetheless failing to comply with the substantive provisions of the BIPA, Morse Watchmans profited from biometrics in violation of 740 ILCS 14/15(c). Morse Watchmans knew that the biometric lockbox it had manufactured and sold would be subject to the provisions of the BIPA, yet the corporation failed to take reasonable measures to comply with the same.

148.  Additionally, by developing and distributing software linking its biometric lockbox to an external device (e.g. computer) that collected, stored and/or disseminated the biometrics of individuals, including Plaintiff and members of the proposed Class, yet nonetheless failing to comply

with the substantive provisions of the BIPA, Morse Watchmans profited from biometrics in violation of 740 ILCS 14/15(c). Morse Watchmans knew that the key control software it had developed and sold would be subject to the provisions of the BIPA, yet the corporation failed to take reasonable measures to comply with the same.

149.    Had Morse Watchmans informed Plaintiff that she was not being provided with the required information regarding her biometrics and the biometric lockbox technology as required by law, she would have sought additional compensation or an alternate arrangement that did not require the provision of her biometrics.

150.    Further, had Morse Watchmans provided Plaintiff with all required disclosures, she would have been able to make an informed decision on whether to request accommodations related to participation in the biometric program.

151.    BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of the BIPA and, alternatively, damages of $1,000 for each negligent violation of the BIPA. 740 ILCS 14/20(1).

152.    Morse Watchmans' violations of the BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements.  Alternatively, Morse Watchmans negligently failed to comply with BIPA.  Plaintiff is entitled to statutory damages accordingly.

<u>**COUNT 3**</u>

**Violations of the Illinois Biometric Information
Privacy Act, 740 ILCS 14/1, *et seq.*,
(On behalf of Plaintiff and the Class and against Defendant,
Bally's Quad Cities Casino & Hotel, LLC)**

153.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

154.    Bally's Quad Cities is a "private entity" as that term is defined under BIPA. 740 ILCS 14/10.

155.    Upon information and belief, Plaintiff and the Class had their "biometric identifiers" collected, captured, received, disseminated, or otherwise obtained and/or used by Bally's Quad Cities. Plaintiff and the Class's "biometric identifiers" were also utilized to identify them, and therefore constitute "biometric information" as defined by the BIPA.  740 ILCS 14/10.

156.    Upon information and belief, Plaintiff and the Class have been aggrieved by Bally's Quad Cities' failures to adhere to the following BIPA requirements, with each such failure constituting a separate and distinct violation of BIPA:

> m.  Bally's Quad Cities failed to inform Plaintiff and the members of the Class in writing that their biometrics were being collected and stored, prior to such collection or storage, as required by 740 ILCS 14/15(b)(1);
>
> n.  Bally's Quad Cities failed to inform Plaintiff and Class in writing of the specific purpose for which their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);
>
> o.  Bally's Quad Cities failed to inform Plaintiff and the Class in writing the specific length of term their biometrics were being captured, collected, stored, and used, as required by 740 ILCS 14/15(b)(2);
>
> p.  Bally's Quad Cities failed to obtain a written release, as required by 740 ILCS 14/15(b)(3);
>
> q.  Bally's Quad Cities failed to provide a publicly available retention schedule detailing the length of time the biometrics are stored and/or guidelines for permanently destroying the biometrics it stores, as required by 740 ILCS 14/15(a); and
>
> r.  Bally's Quad Cities failed to obtain informed consent to disclose or disseminate the Class's biometrics, as required by 740 ILCS 14/15(d)(1).

157.    By capturing, collecting, storing, using, and disseminating Plaintiff's and the Class's biometrics as described herein, Bally's Quad Cities denied Plaintiff and the Class their right to statutorily-required information and violated their respective rights to biometric information privacy, as set forth in the BIPA.

158.    By utilizing a biometric lockbox, which relies on the capture, collection, use, and handling of biometrics, yet nonetheless failing to comply with the substantive provisions of the BIPA,

Bally's Quad Cities profited from biometrics in violation of 740 ILCS 14/15(c).  Bally's Quad Cities knew that the biometric lockbox it was using would be subject to the provisions of the BIPA yet failed to take reasonable measures to comply with the same.

159.    Had Bally's Quad Cities informed Plaintiff that she was not being provided with the required information regarding her biometrics as required by law, she would have sought compensation or an alternate arrangement that did not require the provision of her biometrics.

160.    Further, had Bally's Quad Cities provided Plaintiff with all required disclosures, she would have been able to make an informed decision on whether to request accommodations related to participation in the biometric program.

161.    BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of the BIPA and, alternatively, damages of $1,000 for each negligent violation of the BIPA. 740 ILCS 14/20(1).

162.    Bally's Quad Cities' violations of the BIPA, as set forth herein, were knowing and willful, or were at least in reckless disregard of the statutory requirements.  Alternatively, Bally's Quad Cities, negligently failed to comply with BIPA.  Plaintiff is entitled to statutory damages accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Mary Dailing, on behalf of herself and the proposed Class, respectfully requests that this Court enter an Order:

a.  Certifying the Class as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b.  Declaring that Defendants' actions, as set forth herein, violate BIPA;

c.  Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendants to comply with the BIPA requirements for the capture, collection, storage, use, and dissemination of biometric identifiers and

biometric information and to destroy all biometric information of Plaintiff and of Class members in Defendants' possession and illegally obtained;

d.   Awarding statutory damages of $5,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(1);

e.   Awarding statutory damages of $1,000 for each negligent violation of the BIPA, pursuant to 740 ILCS 14/20(3);

f.   Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3) as well as Fed. R. Civ. P. 23;

g.   Awarding pre- and post-judgment interest, as allowable by law; and

h.   Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff requests trial by jury of all claims.

Dated: June 8, 2022

Respectfully submitted,

MARY DAILING, individually and on behalf of a class of similarly situated individuals,

By: /s/ *Steven Hart*
*One of Plaintiff's Attorneys*

Steven Hart
John Marrese
Shivani Bahl
HART MCLAUGHLIN & ELDRIDGE, LLC
22 W. Wacker Dr., Ste. 1600
Chicago, IL 60602
P. 312.955.0545
F. 312.971.9243
shart@hmelegal.com
jmarrese@hmelegal.com
sbahl@hmelegal.com

*Counsel for Plaintiff and the Putative Class*

33